[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 715.]

CLEVELAND BOARD OF EDUCATION, APPELLEE, *v*. CUYAHOGA COUNTY BOARD OF REVISION; FIRST UNION REAL ESTATE EQUITY & MORTGAGE INVESTMENTS, APPELLANT.

FIRST UNION REAL ESTATE EQUITY & MORTGAGE INVESTMENTS, APPELLANT, V. CUYAHOGA COUNTY BOARD OF REVISION; CLEVELAND BOARD OF EDUCATION, APPELLEE.

[Cite as *Cleveland Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision*, 1995-Ohio-165.]

*Taxation—Real property valuation—Decision of Board of Tax Appeals not overruled when based upon sufficient probative evidence.*

(Nos. 94-1517 and 94-1690—Submitted June 15, 1995—Decided October 11, 1995.)

APPEALS from the Board of Tax Appeals, Nos. 92-H-630, 92-H-631, 92-H-632, 93-J-724, 93-J-725 and 93-J-764.

———————————

{¶ 1} The property at issue in this case consists of nine tax parcels containing 2.05 acres, located at the northwest corner of the intersection of Superior Avenue and West Third Street in Cleveland, Ohio. First Union Real Estate Equity & Mortgage Investments ("First Union") acquired the property in 1977 and has used it since that time as a surface parking lot, capable of accommodating two hundred ninety-six cars. In June 1986, First Union subleased the property to APCOA for a term ending December 31, 1991.

{¶ 2} The property is located in the southeast corner of an area known as the historic warehouse district, and is also part of the central business district. It is currently zoned for limited retail business, with a building height restriction of two hundred fifty feet.

**{¶ 3}** For the tax year 1990, the parcels were assessed by both the Cuyahoga County Auditor and Board of Revision at a true value of $3,243,440. For the tax year 1991, the assessments by the county auditor and board of revision were $13,456,330 and $7,289,990, respectively. Appeals were taken to the Board of Tax Appeals ("BTA") by the Cleveland Board of Education for the tax year 1990, and by First Union and the Cleveland Board of Education for the tax year 1991.

**{¶ 4}** Separate hearings were held before the BTA for the 1990 and 1991 assessment years. First Union and the Cleveland Board of Education each presented appraisal testimony to establish true value. While the approaches of the two appraisers differed, they did agree on two points: (1) the cost approach to value was not applicable, and (2) the property was one of the most desirable remaining undeveloped future office locations in Cleveland's central business district.

**{¶ 5}** Michael S. Folkman, First Union's appraiser, testified that the property's current use as a parking lot was its highest and best use and that because future development of the site was not expected soon, the property's use as a parking lot should not be considered an interim use. He believed that it would be approximately fifteen years before development of the property would be financially feasible. Folkman used the income method to arrive at his true value of $3,650,000 for 1990 and $3,750,000 for 1991. The values were based on a stabilized net operating income from the parking lot of $475,600 for 1990 and $490,000 for 1991, and a capitalization rate of 13.14 percent for 1990 and 13.02 percent for 1991.

**{¶ 6}** Folkman also used a market data approach, based on comparable sales, as though the property were to be sold as a site for current development. This value was $26,800,000. However, because Folkman did not believe that the site would be developed for about fifteen years, he calculated the present value by taking the estimated current development value of $26,800,000 and discounting it, based on a rate of 12.5 percent, for fifteen years, to arrive at a current market value

of $4,600,000. However, Folkman stated that he gave very little weight to his market data approach.

{¶ 7} In contrast, the appraiser for the Cleveland Board of Education, Richard C. Racek, stated that the property's use as a parking lot was an interim use, and the highest and best use for the property was eventual commercial development. Racek stated that it was impossible to predict when the property would be developed. Using the market approach to value, Racek testified that he was relying on "recent sales of similarly used property in order to make a determination of value." Racek looked at seven comparable sales, six of them involving comparable parking lots, like the subject property. Racek believed that in "appraising a parking lot, it's best to use sales of other parking lots" because the buyers of a parking lot "are better at it than any appraiser can be because they are in the marketplace doing it." Based on his market data approach, Racek arrived at a current market value of $80 per square foot for both 1990 and 1991, which translated into true values of $7,290,000 and $7,145,000, respectively. Because he believed the current use was an interim use, Racek declined to use the income method for determining value. His basic reason was that "[p]arking lots in Cleveland's Central Business District do not generate enough parking revenues to justify their land values, and those values are established by what other people have been paying for parking lots."

{¶ 8} The BTA in each case chose to adopt Racek's appraisal as the best evidence of true value, based on his market comparables, stating that it could not accept First Union's appraiser's income approach. The BTA determined the true value of the property to be $7,290,000 for 1990 and $7,289,990 for 1991. First Union filed its appeals as of right with this court for the tax years 1990 (case No. 94-1517) and 1991 (case No. 94-1690).

---

*Armstrong, Mitchell & Damiani, Timothy J. Armstrong* and *Deborah J. Papushak,* for appellee.

*Kadish & Bender, Kevin M. Hinkel* and *David G. Lambert*, for appellant.

_____

***Per Curiam.***

**{¶ 9}** We affirm the decisions of the Board of Tax Appeals.

**{¶ 10}** Because there had been no recent sale of the property in question, both First Union and the board of education relied upon expert appraisers in order to establish its true value. *State ex rel. Park Invest. Co. v. Bd. of Tax Appeals* (1964), 175 Ohio St. 410, 25 O.O.2d 432, 195 N.E.2d 908.

**{¶ 11}** First Union contends that the BTA erred in accepting Racek's appraisal, claiming that Racek erroneously valued the property based on its future highest and best use, rather than its current use as a parking lot. First Union contends that *Porter v. Cuyahoga Cty. Bd. of Revision* (1977), 50 Ohio St. 2d 307, 4 O.O.3d 460, 364 N.E.2d 261, supports its position that its property should be valued solely on the basis of its use as a parking lot. We disagree.

**{¶ 12}** In *Porter,* the county appraised all the land in question at one value, without regard to the individual zoning classification of each parcel. We held that under the facts of that case, it was unreasonable, without support in the record, to value property at more than the value a willing buyer would pay for it as zoned. In this case zoning is not an issue; however, First Union contends that because no one knows when the property will be developed, no use other than a parking lot should be considered.

**{¶ 13}** In this case, as contrasted to *Porter*, there was evidence in the record that buyers were willing to pay more for parking lots in the area than their value purely as parking lots. Further, in *Porter* we stated that "pursuant to Section 2, Article XII of the Ohio Constitution, valuations of property cannot be limited to considerations of current use only, since other factors comprising market value such

as 'location and speculative value' are excluded." *Id*. at 312, 50 O.O.2d at 463, 364 N.E.2d at 265.  See, also, *State  ex rel. Park Invest. Co. v. Bd. of Tax Appeals* (1972), 32 Ohio St. 2d 28, 33, 61 O.O.2d 238, 241, 289 N.E.2d 579, 582.

{¶ 14} The BTA thoroughly examined the testimony of both appraisers and concluded that the market comparables used by Racek were "well chosen and properly adjusted" and represented "the best evidence of value in this case."  In *R.R.Z. Assoc. v. Cuyahoga Cty. Bd. of Revision* (1988), 38 Ohio St. 3d 198, 201, 527 N.E.2d 874, 877, we stated that the BTA's decision on true value "is a question of fact which will be disturbed by this court only when it affirmatively appears from the record that such decision is unreasonable or unlawful," and we would "not overrule BTA findings of fact that are based upon sufficient probative evidence." *Id*.  In this case the valuations by the BTA are supported by the evidence.

{¶ 15} First Union also contends that although separate hearings were held for tax years 1990 and 1991, and the BTA issued separate decisions, the BTA failed to make an independent determination of true value for 1991. First Union contends that for 1991, the BTA did not identify the evidence relied upon in reaching this decision.  We find no support for First Union's contention.  The BTA reviewed the evidence and testimony for 1991 and found that the property had not changed in value since 1990.

{¶ 16} The decisions of the BTA, being neither unreasonable nor unlawful, are hereby affirmed.

*Decisions affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY and COOK, JJ., concur.

WRIGHT AND PFEIFER, JJ., concur separately.

—————————————

**PFEIFER, J., concurring.**

**{¶ 17}** While I agree with the majority that the record supports the Board of Tax Appeals' decision, my concurrence in no way should be interpreted as a vote of support for the "highest and best use" method of valuing property.

WRIGHT, J., concurs in the foregoing concurring opinion.

——————————————